Osso *v.* Rohanna, Appellant.

Argued April 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

reargument refused October 9, 1958.

Before HOOK, P. J.

*R. Wallace Maxwell,* for appellant.

*John I. Hook, Jr.,* with him *Scott and Hook,* for appellees.

OPINION BY HIRT, J., September 11, 1958:

The plaintiffs were the owners of a building in Franklin Township, Green County, in this State, on which they had conducted a restaurant business known as Toll Gate Cafe. On July 10, 1953, they sold the business to the defendant, together with the retail liquor license which had been issued to them by the Pennsylvania Liquor Control Board for the premises. On the same day also they leased the premises to the defendant for a term of five years to be computed from July 31, 1953. Following the transfer of the liquor license and an amusement permit by the Liquor Control

Board to the defendant he went into possession of the premises under the written lease. The lease contained the following provision : "This lease can be terminated at the end of any one year by a ninety day written notice of either party . . . Parties of the first part agree to repair the outside of said building if needed to make all capital repairs inside. All other inside repairs and any damage caused by the patrons or by operation of the business shall be paid for by the party of the second part."

On or about July 19, 1955 the defendant lessee notified the plaintiffs in writing that he intended to vacate the premises on August 1, 1955. In the notice it was stated that the lease would be terminated "as of the first of August" 1955 because of plaintiffs' failure "to repair the outside of said building" and their failure "to make repairs inside by refusing to install a hot water heater required by the Department of Health which failure to install said heater will cause your said tenant to close his place of business." The defendant paid the specified instalments of rent at $75 per month in full to July 31, 1955, and on that date, in accordance with the above notice vacated the premises. Thereupon the plaintiffs brought the present action in which they sought recovery of the remaining rent reserved to the end of the lease, together with damages to the building allegedly caused by the defendant prior to moving from the premises.

At the trial the court limited recovery for rent to the period of one year from July 31, 1955 and directed a verdict for plaintiffs, on that phase of the action, in the sum of $900. The remaining questions were submitted to the jury on proper instructions. The jury under the evidence found that the plaintiffs were not otherwise damaged and their verdict was for $900 and no more. Defendant in his appeal from the judgment

on the verdict contends that judgment should have been entered in his favor n.o.v. He takes the position that he was justified in terminating the lease because of plaintiffs' alleged breach of their covenants to repair the premises.

The lease provided for its termination "at the end of any year" by either party "by a ninety day written notice." In this language a written notice given 90 days *prior* to July 31 of any one of the first four years of the term of the lease was intended. The notice here was given on July 19, 1955. It therefore was ineffective to terminate the lease thirteen days later, on August 1, 1955. The lower court however considered the notice adequate to terminate the lease one year later on July 31, 1956. The plaintiffs acquiesced in this view and the defendant may not complain of the entry of judgment against him for one year's rent unless he was justified in terminating the lease as of August 1, 1955 because of covenants breached by the plaintiffs.

At the argument before the lower court the defendant complained of leaks in the roof, in justification of his removal from the premises although his notice made no mention of a defective roof. In this connection Judge HOOK properly said: "It is true that the plaintiffs agreed to repair the outside of said building, if needed. The defendant contended that the roof leaked, and for that reason, principally he removed from the premises. The testimony shows that the defendant complained on two occasions that the roof leaked, once in 1953 and once in 1955, and that each time the plaintiffs fixed the leak. The defendant testified that he first called attention of plaintiffs to a leak in the Fall of 1953, and that the leak was repaired, and sometime in the year 1955, and again the leak was repaired." Since the repairs to the roof concededly were made with reasonable promptness after notice the defendant may

not complain on the score of a defective roof. *Forrest v. Buchanan,* 203 Pa. 454, 53 A. 267; cf. *Demas v. Laskey,* 358 Pa. 633, 58 A. 2d 134. Actually the defendant was not seriously affected in the conduct of his business by the condition of the roof. In fact Rohanna testified at the trial that his principal complaint at the time of his removal from the premises had to do with the urinal, the plumbing, and the hot water heater which alone was specifically referred to in his notice of July 19, 1955.

There was evidence in the testimony of a representative of the Pennsylvania Department of Health that a replacement in the restaurant of a worn out water heater was necessary and also that there was a leak in the pipe connecting the urinal with the sewer, which required correction. But there is evidence also (which in the light of the verdict we must accept), that the plaintiffs told the defendant to install a new heater and to deduct the cost from the rent; and there is evidence also that Osso went to the premises with a wrench to repair the urinal and was told by the defendant "There's no use to fix it, we moving out." The repair of the urinal was the obligation of the tenant under the terms of the lease. And we agree with the lower court that there was no obligation on the plaintiffs, under the lease, to install a new hot water heater; and that their failure to do so was no defense in an action for the payment of rent. Cf. *Silverman v. Bullock,* 165 Pa. Superior Ct. 216, 67 A. 2d 586. But even if under the lease the landlords had assumed the obligation of replacing the hot water heater, the defendant regardless of the plaintiffs' consent, could have installed the heater and, as a matter of law, could have deducted the cost from the rent as it became due and payable. *McDaniel v. Mack Realty Co. et al.,* 315 Pa. 174, 172 A. 97.

Under the evidence it was a fair inference for the jury that the defendant did not have valid ground for terminating the lease because of any default of the plaintiffs in their obligation to make repairs; and that accordingly the defendant could terminate the lease only "at the end of any one year by a ninety day written notice." Under the circumstances the trial judge was justified in directing a verdict for the plaintiffs on the documentary evidence of the lease, and the jury found that no factual issues were raised by the defendant as to damages sustained by him.

Judgment affirmed.