# Spaulding *v.* Justice, Appellant.

*Landlord and tenant—Repairs—Representations as to condition of building.*

Where a lease provides that the property is rented "in its present condition," and stipulates that the tenant shall keep the premises in repair during the term, and the tenant lives in the property for over a year, pays the rent, and leaves the premises four or five months short of his term, he is estopped from setting up as a defense in an action for rent, alleged false representations by the lessor as to the sanitary condition of the premises. In such a case if the tenant wished to disaffirm his contract, it was his duty to do so immediately and surrender the premises. The mere complaining to the landlord is insufficient. By paying the rent the tenant was estopped from asserting the misrepresentations made to him.

Where a tenant seeks to evade the payment of rent because of misrepresentations made to him by the landlord before the lease was executed, he must show by clear, precise and indubitable proof that such representations were made, that they were untrue as to existing facts, and that the landlord had knowledge of their falsity when he made them.

Argued April 23, 1917. Appeal, No. 18, April T., 1917, by defendant, from judgment of C. P. Allegheny Co., April T., 1915, No. 943, on verdict for plaintiff in case of M. B. Spaulding v. William M. Justice, Renting Agent for German Savings and Deposit Bank and A. W. Ackerman. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Replevin for household goods. Before REID, J.

From the record it appeared that William M. Justice, renting agent, had levied upon the plaintiff's household goods for rent. Plaintiff brought the present action to recover the goods, and claimed that the premises were unsatisfactory, and that he was induced to sign the lease by false representations made to him by the defendant.

When plaintiff was on the stand the following offer was made:

By Mr. Clark: We propose to prove by the witness that at this time the witness took up with the defendant the sanitary condition of this property and asked him if it was in good sanitary condition; that he represented to the plaintiff that it was in such condition. We expect to follow that by proof that it was not in such condition, that the plumbing was bad and the sanitary condition was very bad. We expect to prove that by the employees of the Department of Health of the City of Pittsburgh. We expect to prove also that he called the defendant's attention to a spot on the roof, I believe in the dining room, and asked him if that came from a leak in the roof; and that he replied, No, that it was just some water that had been spilled on the floor above. That he was misled by that, and we expect to follow that by proof that that came from a leak in the roof and that had been for a considerable time and was known to Mr. Justice, and that he refused to fix it or repair it, and that it was injurious to the health of the occupants of this house.

Objected to.

By the Court: Do you offer this as the inducement that led to the signing of this lease, or do you offer it historically?

By Mr. Clark: No, I offer it as the inducement, the representations that induced the signing of this lease, which we claim were fraudulent.

By the Court: Do you aver you would not have signed it but for these inducements?

By Mr. Clark: We would not have signed it but for these representations which were false and fraudulent.

Objected to as immaterial in view of the fact that the plaintiff's statement says he went into possession of this property on the first day of December, 1913, and that shortly after he went in he discovered that the representations were false, and that he continued to pay rent for

a period of fourteen months thereafter, and therefore this offer is too remote.

By Mr. Clark: We will show that we did go and call the attention of Mr. Justice to these things, and continually called his attention to them and had his promise that he would fix them.

Objection overruled and bill sealed for defendant. (1)

The evidence is summarized in the opinion of the Superior Court.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned,* among others, were (1) rulings on evidence quoting the bill of exceptions, (2) in refusing binding instructions for defendant, and (3) refusing defendant's motion for judgment n. o. v.

*E. J. McKenna,* of *McKenna & McKenna,* with him *W. H. Lemon,* for appellants.—Unless circumstances show a different understanding between parties, a statement by a landlord that the plumbing is in good order, is to be regarded merely as an expression of opinion, and not an assertion of fact: Coulson v. Whiting, 14 Alb. N. Cas. (N. Y.) 60; Wolfe v. Arrott, 109 Pa. 473; Crump v. Morrell, 12 Philadelphia 249; Martin v. Berens, 67 Pa. 459.

The lessee waived his right to rescind the contract by continuing in possession and paying rent for thirteen months after discovering the defects in the roof and in the plumbing: Moore v. Gardiner, 161 Pa. 175.

*James M. Clark,* for appellee.

OPINION BY KEPHART, J., July 13, 1917:

The lease in this case was for a term of seventeen months, beginning December 1, 1913. The appellee, the tenant, vacated the premises on January 30, 1915, be-

cause water accumulated in the cellar and the roof leaked. He seeks to escape liability for the balance of the rent because of the fraudulent representations made to him before the lease was executed, that the house was "in an absolutely satisfactory and perfectly sanitary condition, that everything was in very good shape."

The general rule, applying to houses or apartments for rent, is that in the absence of an express agreement there is no implied warranty or representation arising out of the relation of landlord and tenant that the demised premises are fit for the purposes for which they are rented, and that they are tenantable or shall continue so. The rule is caveat emptor as to such transactions: Davis v. Pierce, 52 Pa. Superior Ct. 615. The lease provided that the premises was rented "in its present condition" and the tenant covenanted to "maintain and keep the premises during the term in good repair, including water pipes, their connections and all plumbing fixtures; also the cellar, yard, vault and out-house, free of rubbish, and in such condition as the Board of Health may require." The representations relied upon to overcome these clauses in the lease, and the law with respect to the relationship of landlord and tenant, should be such as to leave in the mind of the court the fixed impression that deceit was intended and consummated. The lease is clear and definite in its terms. It required the tenant to repair and to accept the property in its present condition. It indicated strongly that "his eyes should be his market." The burden was on the plaintiff to present proof clear and convincing in character that these written statements were nullified because of the conditions now complained of. To contradict or vary the terms of a written instrument by parol evidence, following an allegation of fraud, "the evidence relied upon, taken as a whole, must be so persuasive in character, so free from self-contradiction or material internal variances, and so intrinsically probable that the judicial mind can rest thereon with a conviction that the ends of justice would

be served by giving it effect as the basis of a decree reforming the writing in suit......In brief, their testimony must be clear, precise and indubitable before it can be permitted to overcome the documentary proof to which it is opposed; and, in cases of this kind, after measuring the evidence relied upon according to proper legal standards, a court should never permit a jury to do what it would not sanction if sitting as a chancellor": Thompson, Receiver, v. Schoch, 254 Pa. 585-590. Conceding that the language used concerned matters which would materially affect the judgment and action of one about to enter into an agreement, and related to the condition complained of, it is not clear that the testimony presents all the elements necessary to stamp such language, if false, as being fraudulently made. It must appear, among other things, that the representation was made of a fact which did not exist, or which was untrue, and that the person making the representation had knowledge of its falsity. There is no evidence from which the jury could find that at the time the conversations took place, or at the time the lease was executed, the roof in fact did leak, or that water accumulated in the cellar; or in short, that the premises was in an unsanitary and unsatisfactory condition. The premises leased was an apartment, a part of which was then occupied. This particular portion had been sublet, that tenant having occupied it for a period of two years. About three months before the present lease was made, the appellants had been notified by this subtenant that the roof leaked. It was immediately repaired and no further complaint was received about it. The alleged unsanitary condition did not develop until five weeks after the appellee occupied the premises; it would have been an easy matter to have shown by the tenant occupying the same building, or from the preceding tenant, that the condition as represented did, in fact, exist at the time the lease was executed. Assuming that the defective condition of the building developed within a reasonably

short time after its occupancy, so as to establish the fact that the condition did exist when the lease was executed, there is nothing in the record to show that the defendant knew of its existence. Having some months before repaired the leaky condition of the roof, and having received no complaints from the then tenant, appellant had reason to believe that the trouble had been abated. His representation, if made, was believed by him to be true, and the circumstances of this case, as developed by the evidence, are not such as to impose on the defendants more than an ordinary duty of becoming informed as to the condition of the property. The agent's statement was not made recklessly, nor was it made from his own knowledge, nor was the duty to know whether it was true or false imposed on him by his relation to the parties. As an agent he had adopted the means which any house owner would to relieve complaints, and could only depend on such complaints to know of their continued existence unless they were so bad as to cause noticeable damage to the property, in which case the appellee had the same opportunity to learn the condition as had the appellants.

With regard to the clogging up of the drains, there was absolutely no evidence that any such condition existed before the lease was made. When the trouble was investigated it was found that paper and rags had been stuffed in the pipes. The appellee was required, under the lease, to remove this obstruction. Aside from all these circumstances, the appellee lived in the property for upwards of twelve months, paid the rent, and left the premises four or five months short of his term; he cannot at this late date give as his reason for leaving alleged fraudulent representations as to the condition of the premises. It is his duty, if he wishes to disaffirm the contract, to do so immediately and surrender the premises. But he cannot occupy and enjoy the possession and pay the rent for a period of time, and then set up as a defense to an action for rent or resist an action of replevin for the forcible col-

lection of the rent, that he was induced to enter into the contract by false representations of the landlord or his agent. The mere complaining to the landlord as to the condition of the premises will not avail. He must do some positive act in disaffirmance of his contract. By paying the rent he was estopped from asserting the representation: Moore v. Gardiner, 161 Pa. 175.

The motion for judgment n. o. v. should have been sustained. Judgment reversed and it is ordered that the record be remitted to the court below with direction to enter judgment for the defendant on the motion for judgment n. o. v.