## Beasley v. Freedman

*Kenneth A. Wise* and *Alan N. Linder*, for plaintiffs.

*John C. Herrold*, for defendants.

BLAKEY, *J.*, June 10, 1974—This matter is before the court en banc on defendants' numerous preliminary objections to plaintiffs' second amended complaint in five counts. This opinion is written on behalf of the court en banc.

## 1. DEMURRER TO COUNTS I, II, III

Plaintiffs allege in counts I, II, III of their second amended complaint that they leased three different premises from defendants for the purpose of providing habitable living quarters. In each case, after moving into the premises, plaintiffs allege that they discovered certain defects set forth in their com-

plaint, for which they claim damages in assumpsit. Plaintiffs do not allege an express warranty that the premises would be fit for habitation and the leases which they attach to their complaint contain no express warranty. Plaintiffs do allege: (a) that the premises were warranted to be fit for human habitation and that defendants breached that warranty; (b) that after they had moved into the three different dwellings, defendants promised and failed to make certain repairs to correct defective conditions then existing, and (c) that the Housing Code of the City of York required that the rented dwellings be fit for human habitation, that the premises were subject to said code and that the premises were not fit for human habitation. Defendants contend: (a) that there is no implied warranty of habitability under the laws of this Commonwealth; (b) that the lease agreements placed the duty to repair the premises upon the tenants and that there was no consideration to support the alleged promise of the landlord to undertake certain repairs, and (c) that the alleged breach of the housing code does not constitute a breach of lease so that an action of assumpsit may be based thereon.

Plaintiffs concede that early decisions of the Supreme Court of this Commonwealth have held that a tenant is bound to examine property before he enters into a lease and takes the property subject to all existing defects which can be ascertained by inspection. The doctrine of caveat emptor applies to rental housing and no implied warranty of habitability is imposed upon the landlord: Federal Metal Bed Co. v. Alpha Sign Co., 289 Pa. 175 (1927). Plaintiffs have filed a lengthy brief which contends that this doctrine should be changed in the light of current events and conditions. Whatever the merit

of this argument, we deem it obvious that the same should be addressed to our appellate courts or legislature. We consider this court bound by the precedent which plaintiffs recognize.

Plaintiffs first claim that the alleged duty of defendants to repair the premises is based upon the same implied warranty of habitability. As we find no warranty, we must reject this proposition. However, plaintiffs also allege that the landlord made certain express promises to repair the premises, and that they remained in the same in reliance upon these promises. Accepting these averments, as we are obliged to do for purpose of testing a demurrer, we conclude that these averments present a cause of action which defendants must defend. The leases do not flatly provide that the tenants are obliged to keep the premises in repair, as defendants contend. They merely provide that all repairs which lessee elects to do shall be made at the expense of lessee and shall remain on the property for the benefit of the same. In our view the leases do not preclude an enforceable promise by the landlord to undertake certain repairs. The consideration which supports the promise can be plaintiffs' continuance on the premises in reliance foregoing their ability to terminate occupancy either at the expiration of the monthly term, in the case of the first and third lease agreements, or on the basis of constructive eviction, as to all.

We agree with defendants that the alleged, or at least indicated, violation of the Housing Code of the City of York does not constitute a breach of the terms and conditions of the lease and that no action in assumpsit may be based thereon: Kearse v. Spaulding, 406 Pa. 140 (1962).

## 2. DEMURRER TO COUNT IV

Count IV of the complaint alleges an action for injuries in trespass on behalf of the minor plaintiff. Plaintiffs aver that while they were living in premises rented to them by defendants that the minor plaintiff was bitten by bedbugs and that these bites required medical treatment. Plaintiffs further aver that these insect bites resulted from defendants failure to eliminate rodent infestation. Defendants contend that this states no cause of action as there is no duty to remedy defective conditions in the absence of an express covenant to make repairs prior to the execution of a lease with the agreement executed on the basis of these promises.

In Reitmeyer v. Sprecher, 431 Pa. 284 (1968), our Supreme Court recognized that an action in trespass can be maintained against a landlord who expressly covenants to make repairs and fails to do so. In this case the covenant was negotiated prior to the execution of the lease agreement. However, in our view the same reasoning supports a cause of action based upon an alleged express promise made after a month-to-month lease is executed if the tenant remains on the premises in reliance upon said promise and the injury occurs thereafter. As plaintiffs allege that the injuries from bedbugs occurred in January 1972, after the alleged promise to correct the situation and at a time when plaintiffs say that they remained on the premises in reliance upon such promise, we believe that Reitmeyer supports the complaint and not the demurrer to this count.

## 3. DEMURRER TO COUNT V

Count V of plaintiffs' complaint alleges a cause of action in trespass for physical discomfort, emo-

tional distress and humiliation which plaintiffs claim to have suffered as the result of living within defendants' premises. Again plaintiffs seek to make new law and apparently rely upon section 46 of the Restatement 2d, Torts, which provides:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."

Plaintiffs seek to establish a tort which they label "slumlordism." They rely, primarily, upon selected cases from other jurisdictions and certain law review articles.

Even if we assume that our courts would be willing to follow the general principle of the quoted portion of the Restatement, which they have not adopted heretofore, we note that the cause of action is based upon conduct which is not merely improper, but extreme and outrageous, intentional or reckless. Given (a) the existing law of this Commonwealth which does not impose upon the landlord an implied warranty of habitability, (b) the absence of a general duty to repair and (c) the fact that the leases attached to the complaint did not impose any such duty upon the landlord, we have at best an alleged failure to keep certain oral promises to repair certain specific conditions in the three apartments which were occupied by plaintiffs. While this may give rise to a cause of action in assumpsit, as noted above, we reject the contention that such failure constitutes "extreme" and "outrageous" conduct which "intentionally" or "recklessly" causes severe emotional distress. Without these essential conditions the Restatement does not apply.

Plaintiffs acknowledge that the problem of providing adequate low cost housing is one of enormous complexity and the subject of considerable

legislation on the national, state, and local levels. The Housing Code of the City of York and the Pennsylvania Rent Withholding Act of January 24, 1966, P.L. (1965) 1534, as amended, 35 P.S. §§1700-1, et seq., are examples of legislation which has been enacted in an effort to solve the problems involved. It is the feeling of this court that these broad and complex social problems are more appropriately met by such legislative efforts and not by the creation of a new cause of action based upon an untested and rather vague legal theory which would depend for implementation upon countless civil suits.

## 4. MOTION TO STRIKE AND TO MORE SPECIFICALLY PLEAD MEDICAL EXPENSE.

While items of medical expense are normally special damages which must be specifically pleaded pursuant to Pa.R.C.P. 1019(f), they may be claimed as general damage and proved without special averments. Plaintiffs have elected to claim these damages generally. In doing so, their complaint survives defendants' motion to strike and specify. However, plaintiffs, at trial, will be precluded from introducing evidence of specific expense.

## 5. MOTION TO STRIKE IMPERTINENT OR SCANDALOUS MATTERS.

Impertinent matters are matters which are irrelevant to the material issues of the case. When a pleading contains impertinent matters it should be stricken on preliminary objection per Pa.R.C.P. 1017(b)(2). In line with our reasoning above, plaintiffs' references to the Housing Code of the City of York and their allegations that they withhold portions of their rent are not relevant. Consequently,

we grant defendants' motion to strike paragraphs 8, 9, 22, and 33 of the complaint. As we have sustained a demurrer on count V of the complaint, we will not react to the motion to strike certain portions thereof.

Consequently, we enter the following

### ORDER

And now, June 10, 1974, we sustain defendants' demurrer to counts I, II, and III upon the theory of implied warranty of habitability and breach of the Housing Code of the City of York. Defendants' demurrer to said counts on the basis of alleged promises to repair is refused and overruled. Defendants' demurrer to count IV of the complaint is refused and overruled. Defendants' demurrer to count V of the complaint is sustained. Defendants' motion to strike certain portions of the complaint is granted as to paragraphs 8, 9, 22, and 33 and otherwise refused. Defendants' motion for a more specific pleading is refused. We grant an exception to both parties.